Filed 6/7/21  Albrecht v. Albrecht CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying
on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).
This opinion has not been certified for publication or ordered published for purposes of rule
8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION FOUR

| | |
|---|---|
| ROBERT ALBRECHT et. al., | B306601 |
| Plaintiffs and Appellants, | Los Angeles County |
| v. | Super. Ct. No. |
| | 17STPB00908 |
| JEFFREY ALBRECHT, as Trustee, etc., et. al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County, Deborah L. Christian, Judge. Affirmed.

Robert Albrecht for Appellants.

Pearson Law Corporation and Stephen W. Holohan for Respondents.

## INTRODUCTION

Robert Albrecht, Jonathan Albrecht, and James Albrecht[1] appeal from the trial court's orders regarding three petitions filed under Probate Code section 17200,[2] which pertained to the Albrecht 2004 Family Trust (the "Trust"). Those petitions are: (1) appellants' petition for attorneys' fees and costs associated with their demurrer to a prior petition filed by Joyce Pearson seeking Robert's removal as trustee; (2) Robert's petition for approval of his accounting of the Trust's assets and affairs; and (3) Jeffrey's petition for an accounting and distribution. All three petitions were heard at an evidentiary hearing held in February 2020.

Appellants contend that in ruling on these petitions, the trial court committed reversible error by: (1) denying them the opportunity to present evidence at the hearing; (2) removing Robert as trustee; (3) finding Jeffrey did not violate the Trust's no contest clause when he joined Pearson's petition seeking Robert's removal as trustee; (4) denying Robert's accounting without prejudice and appointing a Probate Referee to appraise Ruth's condominium; (5) denying or failing to rule on various requests for attorneys' fees and costs; and (6) repeatedly disregarding the intent of the trustor, Ruth Albrecht. We affirm.

---

1       We refer to Robert Albrecht, Jeffrey Albrecht, Jonathan Albrecht, James Albrecht, and Ruth Albrecht by their first names to avoid confusion. No disrespect is intended. Additionally, we refer collectively to Robert, Jonathan, and James as "appellants," and refer collectively to Jeffrey and Pearson as "respondents."

2       All undesignated statutory references are to the Probate Code.

## FACTUAL AND PROCEDURAL BACKGROUND

Ruth had two adult children, Robert and Jeffrey. She also had two adult grandchildren, Jonathan and James, who are Robert's sons.

In March 2004, Ruth executed a declaration of trust (the "Trust Document") creating the Trust. The Trust Document granted Ruth "full and unrestricted power" to amend, alter, or revoke it throughout her lifetime. The assets comprising the Trust Estate included: (1) Ruth's condominium in Chatsworth; (2) her furniture, furnishings, and personal belongings; (3) a bank account with Citibank; (4) an investment account with Edward Jones; and (5) a 1999 Lexus.

Per the Trust Document, Ruth was the trustor and the trustee. Upon her "death, incapability, resignation, or inability" to serve as trustee, Robert was designated to act as successor trustee. His wife was designated to serve as successor trustee in the event of his "death, incapability, resignation, or inability" to serve as successor trustee.

Among other things, the Trust Document set forth the distribution of the Trust Estate upon Ruth's death, and enumerated the trustee's and successor trustee's powers relating to the Trust's administration. The Trust Document also contained a no contest clause, which stated in pertinent part: "A contestant shall be considered to have predeceased the trustor without surviving issue and not to be in existence at the time of the trustor's death."

In July 2009, Ruth executed an amendment to the Trust Document (the "First Trust Amendment"). The First Trust Amendment clarified the circumstances in which Ruth may be deemed "incapacitated," and authorized the release of her health

3

information and medical records to successor trustees. It also revoked and replaced the Trust Document's provisions setting forth the distribution of the Trust Estate upon Ruth's death. Per the revised distribution provisions: (1) Jonathan was to receive Ruth's "approximately one carat diamond ring"; (2) James was to receive "the diamond ring consisting of multiple smaller diamonds"; (3) Jeffrey was to receive her Lexus; (4) Barbara Rainville was to receive her other jewelry, a cabinet containing her "angel collection," and "all furniture, furnishings, and personal belongings which the residual beneficiaries do not want"; (5) Jonathan and James would each receive $5,000; and (6) all remaining assets would be divided equally among her children.

Ruth amended the Trust Document again in September 2016 (the "Second Trust Amendment"). The Second Trust Amendment revoked the Trust Document's provisions governing the appointment of successor trustee. It replaced those provisions with the following language: "**RUTH B. ALBRECHT** is the initial Trustee of the Trust. Upon the death, incapability, resignation or inability to act, RUTH ALBRECHT nominate [sic] JOYCE J. PEARSON to act as Successor Trustee. Upon the death, incapability, resignation or inability to act of JOYCE J. PEARSON, then ROBERT J. ALBRECHT shall act as Successor Trustee. Upon the death, incapability, resignation or inability to act of ROBJERT J. ALBRECHT, then JEFFREY H. ALBRECHT shall act as Successor Trustee[.]" In all other respects, Ruth "confirm[ed] and readopt[ed] the remaining provisions of [the Trust Document.]"

On the same date she signed the Second Trust Amendment, Ruth executed several other documents. Of relevance to this

4

appeal, she signed a document nominating Pearson as co-trustee of the Trust. She also executed a durable power of attorney granting Pearson the authority to make financial decisions and handle other affairs on her behalf.

In October 2016, Ruth executed a document entitled "Revocation and Declaration of Nullity." By this document, Ruth "revoke[d] and declare[d] to be null and void" all the documents she signed and executed in September 2016, including, among others, the Second Trust Amendment, the document nominating Pearson as co-trustee, and the durable power of attorney appointing Pearson as her agent.

Two months later, in December 2016, Ruth executed a document entitled "Revocation of 'Revocation of Declaration of Nullity.'" Pursuant to this document, she "revoke[d] and declare[d] to be null and void the 'Revocation and Declaration of Nullity'" executed in October 2016, and reinstated all of the documents she executed in September 2016.

In January 2017, Robert filed a petition under section 17200.[3] He alleged Ruth "has been incapacitated since 2015" and, for the past year, has been "incapable of taking care of herself, . . . attending to her financial or business affairs[,] [or] . . . making competent decisions for herself." Robert therefore alleged the documents Ruth executed in September 2016 were "invalid and void," as they were the product of Pearson's undue

3       Under section 17200, subdivision (a) "a trustee or beneficiary of a trust may petition the court . . . concerning the internal affairs of the trust[.]" "Proceedings concerning the internal affairs of a trust include, but are not limited to, proceedings for any of . . . the purposes" enumerated in section 17200, subdivision (b). (§ 17200, subd. (b).)

influence. Thus, Robert requested a judicial declaration that under the operative Trust documents, he—not Pearson—was "the sole true and lawful Trustee of [the] Trust." In the alternative, he sought Pearson's removal as trustee pursuant to section 15642.

Ruth passed away in March 2017.

In May 2017, Pearson filed a petition under section 17200. She alleged the Trust's terms were governed by the Trust Document as amended by the First and Second Trust Amendments. Thus, she requested, among other things, an order confirming the Trust was valid as amended, and that she was the successor trustee.

The same day Pearson filed her section 17200 petition, Robert filed an ex parte application seeking the same relief sought in his section 17200 petition, based largely on the same grounds alleged in the petition.

After attending mediation per court order, on December 22, 2017, Robert and Pearson executed a settlement agreement resolving their claims for relief asserted in their respective petitions and Robert's ex parte application (the "Settlement Agreement"). In exchange for mutually releasing their claims, Robert and Pearson agreed to the following terms: (1) Robert "is and shall be the sole and true lawful trustee of the [Trust]" and Pearson "waive[d] and relinquishe[d] any and all claims she ha[d] or may . . . ha[ve] to act as . . . trustee of [the] Trust"; (2) Pearson and Robert would each receive $55,000 in attorneys' fees, which were to be paid from the net proceeds from the sale of Ruth's condominium; and (3) Pearson would deliver to Robert all keys to the condominium, and provide him with all information and documents necessary to facilitate the Trust's administration. The Settlement Agreement's validity was contingent upon the trial

court's approval of a separate Stipulation and Order. They further agreed to present the Settlement Agreement itself to the court for approval and entry of judgment pursuant to Code of Civil Procedure section 664.6.

The Stipulation and Order acknowledged Robert and Pearson "entered into and executed [the Settlement Agreement,]" which would be "presented to the court for approval and entry of [j]udgment pursuant to [Code of Civil Procedure] section 664.6." It also reiterated Robert and Pearson agreed that Robert was the Trust's "sole true and lawful trustee of the [Trust,]" and that Pearson would provide Robert with the condominium keys and all Trust records and assets in her possession. They further stipulated Robert would be authorized to immediately list Ruth's condominium for sale for the Trust's benefit, and to take all actions reasonably necessary to administer the Trust. The Stipulation and Order did not mention the Settlement Agreement's terms regarding their entitlement to $55,000 each in attorneys' fees.

At a hearing held on December 29, 2017, Robert informed the trial court[4] that he and Pearson had "arrived at a settlement of [their claims] in a stipulation and order." While Robert mentioned they "ha[d] a written settlement agreement," the record does not reflect he provided the court with a copy of the Settlement Agreement; instead, it indicates he only asked the court to review and sign the Stipulation and Order. The trial court granted his request, "find[ing] that the stipulation . . . is appropriate" and that "there is cause to sign [it]." Consequently, the court denied Robert and Pearson's petitions, as well as

---

[4]     Judge Daniel Juarez presided at the hearing.

7

Robert's ex parte application, "without prejudice pursuant to the settlement agreement reached by the parties and signed by the [trial court]."

Three days later, Robert sent a letter to Jeffrey informing him that the trial court signed the Stipulation and Order above, and thereby confirmed him as the sole true and lawful trustee of the Trust. The letter was only accompanied by a copy of the Stipulation and Order. It did not mention the Settlement Agreement or Robert and Pearson's entitlement to $55,000 each in attorneys' fees thereunder.

In February 2018, Pearson filed a petition for instructions under section 17200, asking whether the order approving the Settlement Agreement should be vacated because Jeffrey was not given notice of the December 2017 hearing.[5]

On March 12, 2018, Ruth's condominium was sold. The sale yielded $95,742.29 in net proceeds, which were deposited into a checking account in the Trust's name the next day. That same date, Robert paid himself $55,000 in attorneys' fees pursuant to the terms of the Settlement Agreement. He also paid himself $7,786.55 to reimburse himself for various costs.

A hearing on Pearson's petition was held on April 19, 2018. Robert apparently did not receive notice of the hearing and was unable to attend because he was out of town. Per Robert's request, however, Pearson's counsel filed a copy of an e-mail he received from Robert containing appellants' objections to the petition. The trial court denied the petition without prejudice; nevertheless, it also "partially vacate[d]" the December 2017

---

5 The record does not contain copies of Pearson's petition for instructions or the transcript of the April 19, 2018 hearing.

8

order. Specifically, the court vacated the "order portion" of the Stipulation and Order, and only allowed the "settlement stipulation [to] remain[ ]."

On April 24, 2018, Jeffrey filed a petition under section 17200 alleging that despite his repeated requests, he had not received from Robert any information about the Trust's assets and affairs, the sale of Ruth's condominium, or the basis for his claim of $55,000 in attorneys' fees to be taken from Trust assets. Jeffrey further alleged Robert failed to make required distributions of Trust assets. Accordingly, he asked the court to order Robert to: (1) provide a statutorily-compliant accounting of the Trust's assets and affairs from December 22, 2017 to present; and (2) distribute to him 50% of the proceeds from the sale of Ruth's condominium.

In May 2018, Pearson filed a petition under section 17200, requesting an order: (1) approving the December 2017 Settlement Agreement; and (2) requiring Robert to distribute her share of attorneys' fees from the Trust assets in accordance with the Settlement Agreement.

In June 2018, Robert disbursed $5,000 to each of his sons from the Trust's checking account.

At a hearing on Jeffrey's and Pearson's petitions held in July 2018, Jeffrey's counsel emphasized Robert "refused to provide any financial information concerning the Trust," including information about the net proceeds from the sale of Ruth's condominium; therefore, counsel argued he was unable to evaluate the propriety of Robert's claim for fees under the Settlement Agreement. Asserting Robert's lack of cooperation, Jeffrey's counsel asked the court to "order the proceeds of the sale of [the] condominium put into a blocked account and that no

9

trustee or attorney[s'] fees get paid from the Trust without further court order." In response, Robert represented that "[t]he proceeds of the sale are in a bank account in the name of the [Trust]," and that he was "willing to stipulate that [he] would make no further expenditures without order of the court from that account." He did not disclose at this hearing that he had already disbursed over $70,000 from the sale proceeds, including $55,000 in attorneys' fees to himself.

Per Robert's stipulation, the trial court[6] ordered no further payments from the Trust's checking account were to be made without court order. It also found more information was required to rule on Jeffrey's and Pearson's petitions and continued the hearing on those matters.

After holding further hearings in September 2018 and November 2018, in December 2018, the trial court issued two minute orders addressing Pearson's and Jeffrey's petitions.

First, the trial court granted Pearson's petition for approval of the Settlement Agreement in part. In so doing, it found the previous order approving the Settlement Agreement was void and was properly vacated in April 2018 because the Settlement Agreement "directly affect[s] Jeffrey['s] . . . beneficial interest" in the Trust by authorizing payment of $110,000 in attorneys' fees from Trust assets, but "no notice was given to [him] of the hearing to approve the Settlement Agreement[.]" Ultimately, the court "denied without prejudice" the portion of the Settlement Agreement providing Robert and Pearson $55,000 each in

---

6       Judge Robert S. Wada presided at this hearing as well as the hearings held in September and November 2018. He also issued the December 2018 minute orders addressing Pearson and Jeffrey's petitions.

10

attorneys' fees, and required "[e]ach party . . . to file a properly noticed petition for attorney[s'] fees . . . before the court[.]" The trial court approved the Settlement Agreement in all other respects.

Second, the trial court granted in part Jeffrey's petition for an accounting and distribution. The court ordered Robert to file an accounting compliant with sections 1060 through 1064 and sections 16062 through 16064 for the period beginning December 22, 2017 and ending December 31, 2018. It set the accounting for hearing at a later date and continued the remaining matters in Jeffrey's petition to that date.

Robert filed an accounting and trustee's report in March 2019. In April 2019, Pearson filed her objections to the accounting, in which she argued, among other things, Robert "committed a breach of trust . . . when he paid himself $55,000 under the terms of the . . . Settlement Agreement, but did not pay the same amount to [her]." She therefore requested Robert be removed as trustee. Jeffrey joined and adopted Pearson's objections.

In June 2019, Pearson filed a section 17200 petition also seeking Robert's removal as trustee, which Jeffrey joined. She alleged she had standing to file the petition because she was "a beneficiary of the Trust in that she has a future contingent interest in attorney fees from the Trust." (Footnote omitted.) Pearson further alleged Robert breached his fiduciary duties by: (1) paying himself $55,000 in attorneys' fees under the Settlement Agreement but refusing to pay the same to her; and (2) misleading the trial court about the status of the Trust assets at the July 2018 hearing by failing to disclose he had already disbursed over $70,000 of the proceeds from the sale of Ruth's

11

condominium, and instead implying *all* of the proceeds were in the Trust's checking account.

At a hearing held in August 2019, the trial court[7] sustained appellants' demurrer to Pearson's petition without leave to amend, finding Pearson was not a beneficiary under the Trust, and therefore lacked standing to bring her claims. Accordingly, the trial court dismissed the petition with prejudice. It also set Jeffrey's petition for evidentiary hearing in February 2020.

In September 2019, appellants filed a motion to recover attorneys' fees and costs for their demurrer to Pearson's petition. They argued they were entitled to attorneys' fees under section 15642, subdivision (d), equitable considerations, and the Settlement Agreement. At a hearing held in December 2019, the trial court converted appellants' motion into a section 17200 petition, found it needed further information to rule on the petition, and set the matter for evidentiary hearing on the same date as the hearing on Jeffrey's petition.

At the February 2020 evidentiary hearing, the trial court addressed three matters: (1) appellants' petition for attorneys' fees and costs; (2) Jeffrey's petition for an accounting and distribution; and (3) Robert's accounting.[8] After hearing evidence and argument on each matter in turn, the court ruled as follows.

---

7    Judge Deborah L. Christian presided over the remaining trial court proceedings underlying this appeal.

8    The accounting was not accompanied by a petition for its approval. Per section 1064, subdivision (b), however, "[t]he filing of an account shall be deemed to include a petition requesting its approval, and may include additional petitions for authorization, instruction or confirmation authorized by [the Probate Code],

12

First, the trial court granted appellants' petition for attorneys' fees and costs in part. Specifically, the court granted the petition to the extent it sought $893.96 in costs, but declined to award any attorneys' fees.

Next, the trial court found Jeffrey's petition for an accounting had already been granted December 2018, when Robert was initially ordered to file an accounting. It therefore determined Jeffrey had prevailed on that portion of his petition and was entitled to attorneys' fees and costs. The portion of Jeffrey's petition seeking a distribution was denied without prejudice as premature.

Lastly, in addressing Robert's accounting, the trial court made several rulings. At the outset, the court "denied [the accounting] without prejudice," finding it "was totally insufficient and did not meet the requirements of the [Probate] [C]ode[,]" as it did not list Ruth's condominium as a Trust asset prior to its sale. It therefore ordered Robert to file an accounting compliant with the Probate Code, set it for an OSC hearing, and appointed a Probate Referee to conduct an appraisal of the property. The trial court also removed Robert as trustee, and appointed Jeffrey as interim trustee, based on numerous factual findings concerning Robert's actions throughout the Trust's administration. Robert was further ordered to return the $55,000 in attorneys' fees he had paid himself from the Trust's assets.

---

including but not limited to, a request for an order for compensation of the fiduciary and the attorney for the fiduciary."

13

## DISCUSSION

## I.    Preliminary Considerations

### A.    Clarification of Orders Subject to Review

We begin by clarifying the orders subject to our review. In their amended notice of appeal, appellants state that in addition to challenging a number of the trial court's rulings from the February 2020 hearing, they also seek to appeal the order entered on December 26, 2018, which "den[ied] approval, either in whole or in part, of the Settlement Agreement previously approved" in December 2017.

For the reasons discussed below, we conclude we lack jurisdiction to review the trial court's December 2018 order.

As an initial matter, we note the December 2018 order was appealable, even though it did not expressly enter judgment in the litigation between Robert and Pearson initiated in 2017. "'Although the law relating to appealability speaks in terms of orders or judgments,' it is well established 'that it is not the label but rather the substance and effect of a court's judgment or order which determines whether or not it is appealable. [Citation.]' [Citation.]" (*Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200, 205.) Here, it is clear that by approving in part and disapproving in part the Settlement Agreement, the trial court intended to "finally dispose of" the claims raised in Robert's and Pearson's petitions filed in January and May 2017, respectively, as well as Robert's ex parte application for relief filed in May 2017. (*Ibid.*) Therefore, the December 2018 order had the "intended substance and effect of [a] judgment" and was appealable under Code of Civil Procedure, section 904.1, subdivision (a). (See *ibid.*)

14

The record reflects the Superior Court clerk served notice of entry of the December 2018 order on Robert, appellants' counsel of record, on the same date it was issued. Consequently, per California Rules of Court, rule 8.104(a)(1)(A), appellants were required to file their notice of appeal from the December 2018 order within the following 60 days (i.e., no later than February 25, 2019).[9] They did not file their amended notice of appeal, however, until March 18, 2020, and the record does not reflect they previously filed any other notices of appeal seeking to challenge the December 2018 order.

Accordingly, because appellants did not file a timely notice appeal from the December 2018 order, we "ha[ve] no power to entertain" their challenges to that order in this appeal. (*Van Beurden Ins. Servs. v. Customized Worldwide Weather Ins. Agency* (1997) 15 Cal.4th 51, 56.) We therefore limit our review to the trial court's rulings from the February 2020 hearing.[10]

---

9      The deadline for appellants to file their notice of appeal actually fell on February 24, 2019, which was a Sunday. Consequently, pursuant to California Rules of Court, rule 1.10(b), the deadline was extended to February 25, 2019.

10      To the extent appellants suggest the time to appeal started anew because the orders issued in February 2020 "repeated [the] error" in the December 2018 order, we are not convinced. At the evidentiary hearing, the trial court did not make any rulings on issues giving rise to the December 2018 order. Instead, it observed the order was binding and enforceable because appellants did not appeal it or otherwise challenge its validity by collateral attack. In any event, "[t]he Rules of Court do not provide, once a judgment or appealable order has been entered, that the time to appeal can be restarted or extended by the filing of a subsequent judgment or appealable order making the same

15

### B. Respondents' Forfeiture Argument

Respondents contend we should deem appellants' arguments "waived or forfeited" because their opening brief fails to "set forth, discuss, and analyze all the evidence . . . , both favorable and unfavorable, in connection with each of the matters heard on February 19, 2020." Specifically, they argue that appellants' briefs do not discuss the trial court's reasons for declining to award attorneys' fees related to their demurrer to Pearson's petition for Robert's removal, or the evidence related thereto. Respondents further emphasize appellants' briefs do not expressly challenge or otherwise discuss the trial court's numerous factual findings in support of its rulings related to Robert's accounting or Jeffrey's petition for accounting and distribution, nor do they discuss any of the evidence pertaining to those findings.

Although several of appellants' arguments challenging the trial court's rulings are purely legal in nature, respondents correctly point out that some of their contentions effectively dispute the correctness of the trial court's factual findings. Those findings were based on evidence presented at the February 2020 hearing (e.g., the court's factual findings in support of its removal of Robert as trustee). Arguably, those contentions have been forfeited because, as respondents aptly observe, appellants do not discuss any of the findings themselves or the related evidence. (See *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 737-738.) Nevertheless, we reach the merits of all of appellants' arguments, discussing each one in turn below.

---

decision." (*Laraway v. Pasadena Unified Sch. Dist.* (2002) 98 Cal.App.4th 579, 583.)

## II. Appellants' Due Process Argument

Appellants contend the trial court denied them a fair trial by precluding them from presenting any evidence to establish their case at the evidentiary hearing. According to appellants, the trial court's actions "constitute[d] reversible error per se." (Italics omitted.) As discussed below, we do not agree with their argument.

"'One of the elements of a fair trial is the right to offer relevant and competent evidence on a material issue. Subject to such obvious qualifications as the court's power to restrict cumulative and rebuttal evidence . . . , and to exclude unduly prejudicial matter [citation], denial of this fundamental right is almost always considered reversible error. [Citations].' [Citation.]" (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357, italics omitted (*Elkins*).) "The erroneous denial of some but not all evidence relating to a claim [citations] differs from the erroneous denial of all evidence relating to a claim . . . [citations]. In the former situation, the appellant must show actual prejudice; in the latter situation, the error is reversible per se." (*Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1115 (*Gordon*).)

At the evidentiary hearing, Robert represented himself in his capacity as trustee and a residual beneficiary of the Trust, and represented Jonathan and James as beneficiaries of the Trust. He was also sworn in to testify as a witness, and had prepared a binder of exhibits he had hoped to present for the court's review.[11]

---

11 Respondents were not given copies of appellants' exhibits until the morning of the hearing. The exhibits were provided to

17

At the beginning of the hearing, Robert asked to "inform the court about how [he] expect[ed] [his] testimony to go [at the hearing]." The trial court noted it would "hear what [he] ha[d] to say," but cautioned it may choose to proceed differently. Subsequently, Robert stated he "had planned to testify [all at] once as to . . . the three different matters" before the court and present his exhibits in chronological order. The trial court responded that rather than allowing the hearing to proceed in Robert's requested manner, it was going to address each petition individually, one-at-a-time.

Appellants correctly point out that, throughout the hearing, Robert made several requests to present evidence in response to opposing counsel's arguments or questions by the trial court, which were denied. The record reflects, however, in all but one of those instances, he had asked to present evidence on matters that the trial court determined were irrelevant to the issues relating to the petition it was considering at the time. For example, while addressing appellants' petition for attorneys' fees and costs, the trial court declined Robert's request to present evidence about whether Ruth intended for him to serve as successor trustee prior to the execution of the Settlement Agreement, finding that the events pre-dating the Settlement Agreement were irrelevant to appellants' claim for fees and costs incurred in demurring to Pearson's petition for Robert's removal as trustee. Similarly,

them in "a pile," which was not three-hole punched, did not contain any tabs, and was unpaginated. Given their format, Jeffrey's counsel argued appellants "should be precluded from being able to introduce all of them and . . . move[d] to strike them all." The record reflects the trial court did not rule on this request.

18

when considering Jeffrey's petition, the trial court denied Robert's request to present evidence about Ruth's intent in including the Trust's no contest clause. It also declined his request to present evidence detailing his unsuccessful efforts to access a checking account Pearson had opened on Ruth's behalf, or the Trust's entitlement to those funds. In so doing, the court found that evidence was irrelevant to the key issue at hand at the time, i.e., whether Jeffrey was entitled to a distribution.

Robert's final request to present evidence was essentially an objection to the trial court's refusal to allow him to "basically give a narrative about" all of the exhibits in his binder as he desired. By declining to allow Robert to present evidence in his preferred manner, however, the trial court did not deny appellants the opportunity present *any* evidence, as they contend. On the contrary, the record reflects that appellants were afforded an opportunity to be heard on all of the issues pertinent to the three matters addressed at the hearing. For example, Robert presented evidence and argument regarding appellants' positions on the following issues: (1) the amount of attorneys' fees and costs sought by their petition; (2) whether Robert was partially responsible for Pearson filing her petition for his removal as trustee; (3) whether Jeffrey was entitled to a distribution; (4) whether Jeffrey was entitled to attorneys' fees and costs for filing his petition; (5) whether Robert was required to pay Pearson $55,000 in attorneys' fees from the proceeds of the sale of Ruth's condominium at the time he paid himself under the Settlement Agreement; (6) whether the Settlement Agreement was properly set aside by the December 2018 order; (7) whether Robert knowingly omitted material information about the Trust's assets at the July 2018 hearing; and (8) whether Robert's

19

representation of himself and his sons in a position adverse to Jeffrey constituted an impermissible conflict of interest.

On this record, we conclude the trial court did not deny appellants the opportunity to present "*all* evidence relating to [their] claim[s][.]" (*Gordon*, *supra*, 170 Cal.App.4th at p. 1114, italics in original.) Instead, the record reflects the court appropriately exercised its "inherent power to control [the proceedings] before [it,]" (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967), and allowed appellants to present "'relevant and competent evidence on [the] material issue[s]'" presented for determination. (*Elkins*, *supra*, 41 Cal.4th at p. 1357, italics omitted.) We therefore reject appellants' contention that the court committed reversible error per se by denying them a fair hearing.

## III.    Robert's Removal as Trustee

Appellants contend the trial court erred by removing Robert as trustee. In support of this position, they advance two primary arguments. We address each in turn below.

### A.    Lack of Notice

First, appellants contend the trial court erred by removing Robert as trustee because "[n]either the court nor any party gave any notice or indication whatsoever that the removal of the trustee would be an issue at trial." We disagree.

As noted above, Pearson's objections to Robert's accounting, which Jeffrey joined, asserted Robert engaged in dishonest conduct throughout the Trust's administration and sought his removal as trustee. Her objections were an appropriate vehicle for raising those issues for determination at the hearing on

20

Robert's accounting. (See *Coberly v. Superior Court of Los Angeles County* (1965) 231 Cal.App.2d 685, 688 ["[A] hearing on a . . . trustee's petition for approval of its account[ ] is the proper time and place for a beneficiary to raise the issue of a trustee's neglect of duty or failure to properly discharge its office. [Citations.]"]; see also *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 428-429 [trustee may be suspended per requests raised in objections to a petition seeking approval of the trustee's accounting].) Pearson served Robert with a copy of her objections in April 2019. Appellants were therefore adequately notified that Robert's removal as trustee was an issue to be addressed at the hearing.

### B. Improper Grounds for Removal

Next, appellants contend Robert's removal as trustee was not based on proper grounds. Specifically, they argue: (1) Robert did not have any actual or potential conflicts of interest; (2) any conflicts of interest that did exist did not justify removal because Ruth was aware of their existence at the time she appointed Robert to serve as her successor trustee; and (3) Robert should not have been removed based on his payment of $55,000 in attorneys' fees to himself under the Settlement Agreement. Again, we do not agree with appellants' arguments.

The court may remove a trustee "[w]here the trustee has committed a breach of the trust." (§ 15642, subd. (b)(1).) "A violation by the trustee of any duty that the trustee owes the beneficiary is a breach of trust." (§ 16400.) These duties include, among others, "a duty to administer the trust solely in the interest of the beneficiaries" (§ 16002, subd. (a)); "a duty to deal impartially with [all beneficiaries]" (§ 16003); "a duty to keep the

21

beneficiaries of the trust reasonably informed of the trust and its administration" (§ 16060); and a duty to "provid[e] requested information to the beneficiary relating to the administration of the trust relevant to the beneficiary's interest" (§ 16061). In short, "[t]he trustee is a fiduciary, and as such must act in the highest good faith towards the beneficiary, must make full disclosure of material facts, and must not acquire an adverse interest, and must not use the position to gain any advantage over the beneficiary or to make any special profit. [Citations.]" (13 Witkin, Summary of Law (11th ed. 2020) Trusts, § 75.)

In addition, pursuant to section 15642, subdivision (b)(9), the court may also remove a trustee "[f]or other good cause."

We review a trial court's removal of a trustee for abuse of discretion. (*Trolan v. Trolan* (2019) 31 Cal.App.5th 939, 957.) "'An abuse of discretion occurs only if the reviewing court, considering the applicable law and all of the relevant circumstances, concludes that the trial court's decision exceeds the bounds of reason and results in a miscarriage of justice.' [Citation.] In applying the abuse of discretion standard, 'we resolve all evidentiary conflicts in favor of the [decision] and determine whether [it] "'falls within the permissible range of options set by the legal criteria.'" [Citation.]'" (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 292-293.)

Based on its remarks at the evidentiary hearing and its written order, the trial court's removal of Robert as trustee rested on the following findings of fact: (1) Robert's legal representation of himself and his sons in a position adverse to Jeffrey "is a direct conflict of interest that has not been waived by all parties"; (2) Robert failed to inform the court at the July 2018 hearing that he already "paid himself over two-thirds" of the condominium

22

sale proceeds, which was "clearly disingenuous at best and deceitful and fraudulent at the worst case scenario"; (3) Robert did not provide Jeffrey notice of the Settlement Agreement, which contained terms affecting his beneficial interest in the Trust; (4) Robert did not comply with Jeffrey's requests for information about Trust finances or an accounting; and (5) Robert did not comply with the December 2018 order "invalidating payment of the $55,000 to himself" or "seek instruction from the court or from any practicing probate attorney" on how to proceed in light of that order.

At the outset, we note appellants effectively dispute the trial court's findings regarding Robert's conflict of interest and his failure to comply with the December 2018 order. They do not challenge any of the court's other factual findings or otherwise contend those findings were insufficient to warrant his removal as trustee. In our view, those unchallenged findings alone are sufficient to support the conclusion that the trial court did not abuse its discretion by removing Robert as trustee under section 15642, subdivision (b)(1). Specifically, they demonstrate Robert committed a breach of trust by violating his duties under sections 16060 and 16061, as he withheld material information about the Trust's finances and affairs from Jeffrey, a residual beneficiary. They also establish Robert's removal was warranted under section 15642, subdivision (b)(9) based on his failure to disclose to the court material information about the status of the Trust's assets.

In any event, we also conclude the trial court did not abuse its discretion by relying on the challenged findings to remove Robert as trustee. As noted above, at the evidentiary hearing, Robert represented himself as the Trust's trustee and one of its

23

residual beneficiaries, and represented both of his sons as beneficiaries of the Trust. In that capacity, he adopted the position that the December 2018 order was invalid, and therefore he was entitled to the $55,000 in attorneys' fees paid from Trust assets under the December 2017 order approving the Settlement Agreement. That position was adverse to Jeffrey's position on the matter, i.e., that Robert was not entitled to the $55,000 in attorneys' fees because the December 2017 order was properly set aside as void, as Jeffrey was not given notice of the Settlement Agreement itself or the hearing on its approval. On this record, the trial court did not err by finding Robert's legal representation of himself and his sons resulted in a conflict of interest implicating his ability to act in the best interests of *all* of the beneficiaries. This finding reasonably supports a conclusion that Robert violated his duty "to deal impartially" with all of the Trust's beneficiaries. (§ 16003.)

We reject appellants' contention that the conflict of interest discussed above was insufficient to justify Robert's removal because Ruth was "well aware of [it] . . . when she created her trust and appointed Robert as successor trustee[.]" It is true that "[w]hen the settlor of a trust has named a trustee, fully aware of possible conflicts inherent in his appointment, only rarely will the court remove that trustee, and it will never remove him for potential conflict of interest but only for demonstrated abuse of power detrimental to the trust. [Citations.]" (*Estate of Gilliland* (1977) 73 Cal.App.3d 515, 528.) Here, however, Ruth could not have been aware of the specific conflict giving rise to Robert's removal as trustee, as it arose entirely out of events occurring after her death in March 2017.

24

We also reject appellants' contention that the trial court should not have removed Robert as trustee because his payment of $55,000 in attorneys' fees to himself was approved by the court in December 2017, and therefore did not constitute a breach of trust. Their argument misses the mark in several respects. First, the trial court did not find Robert committed a breach of trust by disbursing $55,000 to himself out of the Trust assets under the Settlement Agreement. Rather, it removed Robert based in part on his failure to comply with the order vacating the December 2017 order approving the Settlement Agreement, which invalidated the portion of the Settlement Agreement authorizing the $55,000 disbursement. While appellants firmly maintain the December 2018 order was incorrectly decided, they did not appeal it in a timely fashion, as discussed in Section I.A above. Thus, even if it was incorrect, that order has long since become final and binding. (See *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1138; see also *Crew v. Pratt* (1897) 119 Cal. 139, 151-152.) Under these circumstances, the trial court could have reasonably concluded Robert's unauthorized retention of Trust funds after receiving notice of the December 2018 order constituted a breach of trust in violation of his "duty to administer the trust solely in the interest of the beneficiaries." (§ 16002, subd. (a).)[12]

---

12    Appellants do not challenge the trial court's finding that Robert "did nothing to comply with [the order partially vacating the Settlement Agreement]," as he "did not return the funds to the trust account" or "seek instruction from the court or from any practicing probate attorney." Nonetheless, we note this finding is supported by substantial evidence, namely, Robert's testimony that he did not take the actions identified by the court.

25

In sum, appellants have not shown the trial court abused its discretion by removing Robert as trustee.

## IV.    Jeffrey's Violation of the Trust's No Contest Clause

During the portion of the evidentiary hearing on Jeffrey's petition, appellants contended Jeffrey was not entitled to any of the relief sought because he was no longer a Trust beneficiary, as he had violated the Trust's no contest clause. Specifically, they argued that by joining Pearson's petition seeking Robert's removal as trustee, he improperly sought to invalidate the Trust provisions appointing Robert as successor trustee. The trial court rejected this argument. Appellants contend the trial court's failure to rule on this issue was error. We disagree.

Section 21310 et seq. governs no contest clauses in "any instrument, whenever executed, that became irrevocable on or after January 2001." (§ 21315, subd. (a).) A "'[n]o contest clause'" is "a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary for filing a pleading in any court." (§ 21310, subd. (c).) Section 21310, subdivision (d) defines "'[p]leading'" as "a petition, complaint, cross-complaint, objection, answer, response, or claim."

Section 21311, subdivision (a) sets forth the three circumstances in which a no contest clause may be enforced. Of relevance to this appeal,[13] subdivision (a)(1) states that a no

---

13    While they do not to cite it, appellants appear to rely solely on section 21311, subdivision (a)(1) to argue that we should enforce the Trust's no contest clause against Jeffrey. In any event, because the Trust Document does not "expressly

26

contest clause may only be enforced against "[a] direct contest that is brought without probable cause."

Pursuant to section 21310, subdivision (a), a "'[c]ontest'" is "a pleading filed with the court by a beneficiary that would result in a penalty under a no contest clause, if the no contest clause is enforced." Under section 21310, subdivision (b), "'[d]irect contest' means a contest that alleges the invalidity of a protected instrument or one or more of its terms based on one or more of the following grounds: [¶] (1) Forgery. [¶] (2) Lack of due execution. [¶] (3) Lack of capacity. [¶] (4) Menace, duress, fraud, or undue influence. [¶] (5) Revocation of a . . . trust pursuant to Section 15401, or revocation of an instrument other than a will or trust pursuant to the procedure for revocation that is provided by statute or by the instrument. [¶] (6) Disqualification of a beneficiary under Section 6112, 21350, or 21380."

"'The standard of review where the applicability of a no contest clause is at issue and there are no disputed facts is de novo. [Citations.][']" (*Bradley v. Gilbert* (2009) 172 Cal.App.4th 1058, 1068.)

Section 21310 et seq. applies to the Trust's no contest clause because the Trust became irrevocable when Ruth died in March 2017. (§ 21315, subd. (a).) Applying the principles above, even assuming Jeffrey's joinder to Pearson's petition was a "'[p]leading'" within the meaning of section 21310, subdivision (d), and therefore was a "'[c]ontest'" under section 21310, subdivision (a), we conclude it was not a "'[d]irect contest'" as defined by section 21310, subdivision (b). Specifically, by joining

provide[ ]" for the application of subdivision (a)(2) and/or (a)(3), those provisions do not apply here. (§ 21311, subd. (a)(2)-(3).)

Pearson's petition, Jeffrey did not allege the Trust Document, or one or more of its terms, was invalid based on any of the grounds enumerated in section 21310, subdivision (b). Rather, he effectively acknowledged Robert had been appointed successor trustee per the Trust's terms, but joined Pearson's allegations that Robert should be removed from that position because he breached his fiduciary duties under sections 16002, subdivision (a), 16004, subdivision (a), and 16006. Accordingly, the trial court did not err by declining to enforce the Trust's no contest clause against Jeffrey.

## V. Denial of Robert's Accounting and Appointment of Probate Referee to Conduct an Appraisal

Appellants contend the trial court erred by finding Robert's accounting failed to comply with the Probate Code because "nothing contained in the [applicable] Probate Code provisions require[s] an appraisal of real property, or the inclusion of an appraised value after its sale in the Accounting Summary." They also contend the trial court erred by ordering an appraisal of Ruth's condominium. As discussed below, we conclude appellants' arguments are unavailing.

Section 1061, subdivision (a)(1), requires an account to "contain a summary showing . . . : [¶] (1) [t]he property on hand at the beginning of the period covered by the account, which shall be the value of the property initially received by the fiduciary if [it] is the first account[.]" Thus, the summary of account "must state the value of the property initially received by the fiduciary if [it] is the first account[.]" (Gold et. al., Cal. Civ. Prac. Probate and Trust Proceedings (2021), Summary of Account, § 21:32.)

28

We review the trial court's application of a statute to undisputed facts de novo. (See *Mentzer v. Hardoin* (1994) 28 Cal.App.4th 1365, 1369.)

Robert's summary of his accounting states Ruth's condominium was a Trust asset, identifies when it was sold and what the net proceeds of the sale were, and notes the current balance of the checking account into which the sale proceeds were deposited. As the trial court noted, however, the summary does not identify the value of the condominium as of the date Robert received access to it as trustee. (*Ibid.*) Therefore, the court did not err when it found the accounting did not comply with the Probate Code and denied the accounting without prejudice on that basis. (See § 1061, subd. (a)(1).)

We are also not persuaded by appellants' contention that the trial court's appointment of a Probate Referee to appraise Ruth's condominium was a "useless exercise in futility" amounting to reversible error. Under section 17206, the trial court has "discretion [to] . . . make any orders and take any other action necessary and proper to dispose of the matters presented by [a section 17200] petition," which we review for abuse. (*Dunlap v. Mayer* (2021) 63 Cal.App.5th 419, 424-425.)

We discern no of abuse of discretion here. The record does not, as appellants contend, reflect the parties agreed upon the condominium's approximate value at the beginning of the accounting period. Consequently, having found Robert had been less than forthright in providing accurate information about the Trust's assets to the court in the past, the trial court reasonably determined an appraisal was necessary to ensure the condominium's value was properly assessed and accurately included in the next accounting he was to file. Further, as the

29

court suggested at the hearing, the appraised value of the condominium would likely assist it in evaluating whether Robert properly discharged his duties as trustee when he sold the condominium.

## VI. Appellants' Requests for Attorneys' Fees and Costs

### A. Attorneys' Fees and Costs Associated with Demurrer to Pearson's Petition for Removal

Appellants contend the trial court erred by declining their request for attorneys' fees and only awarding them costs for their demurrer to Pearson's petition for removal. We are not convinced.

Section 15642, subdivision (d) provides: "If the court finds that the petition for removal of the trustee was filed in bad faith and that removal would be contrary to the settlor's intent, the court may order that the person or persons seeking the removal of the trustee bear all or any part of the costs of the proceeding, including reasonable attorney's fees." In general, we review the trial court's orders on a request for attorneys' fees and costs for abuse of discretion. (See *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

At the evidentiary hearing, the trial court explained its ruling was based on its finding that Robert was partially at fault for Pearson filing her petition for his removal. Specifically, it found: (1) before the December 2017 order was vacated, Robert did not comply with the Settlement Agreement and pay Pearson the attorneys' fees she was entitled to under its terms; and (2) after the trial court vacated the December 2017 order and declined to approve the portion of the Settlement Agreement authorizing payment of attorneys' fees, Robert did not return the

$55,000 he had disbursed to himself, and did not file a petition for recovery of attorneys' fees as ordered by the court. The trial court determined that had Robert honored the Settlement Agreement or complied with the December 2018 order, Pearson would not have filed her petition.

Appellants do not dispute any of the trial court's findings in support of its order on their petition for attorneys' fees and costs. Instead, they appear to argue that because the court awarded costs, it should have also granted their request for attorneys' fees because it necessarily found the requirements of section 15642 had been satisfied.

We acknowledge the record is unclear with respect to the legal basis of the trial court's ruling (i.e., whether it relied on section 15642, subdivision (d), equitable considerations, or the terms of the Settlement Agreement). Even assuming the ruling was based on section 15642, subdivision (d), however, the statute does not support appellants' argument, because it expressly provides the court "*may* order that the person or persons seeking the removal of the trustee bear all *or any part* of the costs of the proceeding[.]" (Italics added.) Appellants do not provide any reasoned analysis showing the trial court abused its discretion by relying on the findings above to award costs and decline their request for fees. Accordingly, we conclude they have not shown the trial court's ruling on this issue should be reversed. (See *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 ["'This court is not inclined to act as counsel for . . . any appellant and furnish a legal argument as to how the trial court's rulings . . . constituted an abuse of discretion' [citation], or a mistake of law."].)

31

## B.    Reimbursement for Other Fees and Costs

Next, appellants contend the trial court committed reversible error by declining to rule on Robert's requests for attorneys' fees and costs incurred throughout his administration of the Trust, which were set forth in the accounting. We are not persuaded.

As noted above, the trial court did not rule on the merits of Robert's accounting, and therefore did not pass upon his requests. Instead, the trial court denied Robert's petition to approve the accounting without prejudice based on its finding that it did not comply with the basic requirements set forth in the Probate Code, ordered Robert to file a proper accounting, and set that accounting for an OSC hearing. In so doing, it essentially deferred ruling on Robert's requests set forth in the accounting until it had before it an accounting containing all statutorily-required information in the proper format. We conclude the trial court's decision to proceed in this manner was an appropriate exercise of its authority to "take . . . any other action necessary or proper to dispose of the matters presented by the petition[.]" (§ 17206.)

## VII.  Appellants' Arguments Regarding Ruth's Intent

Appellants contend several of the trial court's rulings should be reversed because they contradicted Ruth's intent as reflected by the Trust Document's provisions.

As an initial matter, we clarify which documents govern the Trust's terms for purposes of this appeal. Appellants contend the Trust is solely governed by the Trust Document and the First Trust Amendment, as "the trustee and all four trust beneficiaries

agreed that the 2004 and 2009 trust documents constituted the legally operative trust instrument." In support of this position, appellants rely on the portion of Jeffrey's petition stating: "Petitioner alleges that the Trust and [the First Trust Amendment] control the disposition of Trust assets and required distributions to the beneficiaries." This allegation, however, does not indicate Jeffrey agreed that the Trust Document and the First Trust Amendment dictate *all* of the Trust's terms. Instead, it reflects his position that the terms governing the distribution of the Trust's Estate are set forth in the Trust Document, as amended by the First Trust Amendment.

As noted above, although Robert previously disputed the Second Trust Amendment's validity in 2017 his claims were dismissed without prejudice pursuant to the Settlement Agreement. None of the petitions at issue at the February 2020 hearing sought to invalidate the Second Trust Amendment, or the December 2016 document reinstating it following its revocation in October 2016.[14] Nor does the record reflect any rulings have been made regarding the validity of any of the Trust

_____

14     The trustee's report accompanying Robert's accounting asserts "Jeffrey and Pearson conspired to fraudulently induce incapacitated Ruth to execute documents from her deathbed" in September 2016, which she "repudiated and revoked" by the "Revocation and Declaration of Nullity" executed in October 2016. It does not, however, address the December 2016 "Revocation of 'Revocation and Declaration of Nullity,'" which reinstated the documents executed in September 2016. In any event, because appellants' opening brief does not raise any issues pertaining to the Second Trust Amendment's validity, we treat any arguments on this point as abandoned. (See *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1120-1121.)

33

Amendments. On this record, we conclude, for purposes of this appeal, that the Trust's terms are governed by the Trust Document, as amended by the First and Second Trust Amendments. With this in mind, we turn to address appellants' arguments.

First, appellants contend the trial court ran afoul of Ruth's intent by removing Robert as trustee. We disagree. The Trust Document, as amended by the Second Trust Amendment, shows Ruth intended Robert to serve as successor trustee following Pearson's death, incapability, resignation, or inability to act as successor trustee. Appellants do not cite, and we did not find, any provisions in the Trust Document establishing she intended Robert to remain successor trustee, even upon a judicial finding that he committed a breach of trust under the applicable provisions of the Probate Code.

Next, we reject appellants' contention that the trial court's appointment of Jeffrey as interim successor trustee following Robert's removal was inconsistent with Ruth's intent. Where the office of trustee is vacant, and "the trust instrument provides a practical method of appointing a trustee or names the person to fill the vacancy, the vacancy shall be filled as provided in the trust instrument." (§ 15660, subd. (b).) Pursuant to the Second Trust Amendment, Ruth nominated Jeffrey to serve as successor trustee if Robert was unable to serve. Accordingly, contrary to appellants' argument, the trial court's appointment of Jeffrey as interim successor trustee following Robert's removal was wholly consistent with Ruth's intent.

Additionally, we are not persuaded by appellants' contention that the trial court disregarded Ruth's intent by only granting their petition for attorneys' fees and costs in part, and

declining to rule upon Robert's request for reimbursement of other fees and costs. In support of this position, appellants rely on the provisions of the Trust Document granting the trustee the power "[t]o commence or defend such litigation with respect to the Trust or any property of the Trust Estate as the Trustees deems [sic] advisable, at the expense of the Trust," to "employ . . . counsel as may be reasonably necessary in connection with managing and protecting the trust, and to pay them reasonable compensation from the trust estate," and "to defend, at the expense of the trust estate, any contest or other attack . . . on this trust or any of its provisions or amendments." None of these provisions, however, reflect Ruth intended any party who files an unsuccessful petition seeking removal of a trustee based on allegations of breach of trust to bear the trustee's costs in defending against it. Nor do they demonstrate the trial court ran afoul of Ruth's intent by deferring its ruling on Robert's request for reimbursement of expenses until he submitted a statutorily-compliant accounting.

Appellants further contend the December 2018 order declining to approve a portion of the Settlement Agreement was contrary to Ruth's intent. The crux of this argument is that the order was incorrectly decided. As discussed in Section I.A, however, we lack jurisdiction to review the December 2018 order.

Appellants also contend the trial court erred by requiring Robert to submit an accounting "contrary to the express provisions of the [T]rust and the intent of the trustor." It is unclear whether appellants are challenging the December 2018 order or the February 2020 order, both of which required Robert to file an accounting. In any event, we need not consider their arguments on this issue because an order "[c]ompelling the

trustee to submit an account or report acts as trustee" is not appealable. (§ 1304, subd. (a)(1).)

Moreover, appellants contend the trial court failed to carry out Ruth's intent by declining to enforce the Trust's no contest clause against Jeffrey. In support, they reiterate that "Jeffrey clearly violated its provisions" by joining Pearson's petition to remove Robert as trustee. We rejected that argument in Section IV, and conclude for the reasons stated above that the trial court's ruling on this issue was not contrary to Ruth's intent.

Lastly, appellants contend the trial court disregarded Ruth's intent by appointing a Probate Referee to appraise Ruth's condominium, ordering Robert to return the $55,000 in attorneys' fees he disbursed to himself, and delaying the Trust's administration "for over four years" by "order[ing] innumerable continuances for no apparent reason." Appellants, however, do not cite to any provisions in the Trust Document, as amended, or any other evidence in the record, showing those rulings were contrary to Ruth's intent. We therefore conclude appellants failed to establish the trial court's rulings on these issues constituted reversible error.

**DISPOSITION**

The trial court's orders entered on February 19, 2020 are affirmed. Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, J.


We concur:


WILLHITE, Acting P.J.


COLLINS, J.